**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiff, the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **FRANCISCO JAVIER TORAL DELGADO, Individually and On Behalf of All Others Similarly Situated,** | |
| **Plaintiff,** | **COLLECTIVE & CLASS ACTION COMPLAINT** |
| **-against-** | |
| **NY ASPHALT, INC., BROADWAY PAVING CORP., MICHAEL THOMPSON and JOSEPH GIANNETI, Jointly and Severally,** | **Jury Trial Demanded** |
| **Defendants.** | |

Plaintiff Francisco Javier Toral Delgado ("Toral" or "Plaintiff"), individually and on behalf of all others similarly situated, as class and collective representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1.    Plaintiff is a construction worker and operating engineer who worked for Defendants on public streets and roadways and other public paving projects throughout New York

1

City and New York State, as well as New Jersey, pursuant to contracts with New York City and New York State government agencies and/or other municipal entities including but not limited to the New York State Department of Transportation, New York City Department of Transportation, New York City Department of Design and Construction, the New York Police Department, and the Port Authority of New York and New Jersey.

2.    Defendants misclassified Plaintiff as a laborer and paid him hourly rates that reflected this incorrect classification for work that he performed on public streets and roadways and other public paving projects throughout New York City and New York State, as well as at least one (1) project in New Jersey. Further, Defendants did not pay Plaintiff any wages at all for a significant number of hours worked, resulting in significant unpaid regular and overtime wages each week.

3.    Plaintiff brings this action to recover unpaid overtime premium pay owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiff also seeks to recover unpaid prevailing wages, daily overtime and supplemental benefits which he was entitled to receive for work he performed pursuant to contracts entered into between Defendants and with New York state and city government agencies and/or other municipal entities, which required payment of prevailing wages.

4.    Plaintiff also brings claims for unpaid wages and for Defendants' failure to provide proper wage statements pursuant to NYLL §§ 190 *et seq.*

5.    Plaintiff brings his FLSA claims on behalf of himself and all other similarly situated employees of Defendants and his NYLL claims on behalf of himself and a Federal Rule of Civil Procedure 23 class of all construction employees and manual laborers working for Defendants in New York during the six (6) year period preceding the filing of this complaint, plus the 228-day

COVID-19 tolling period instituted by the Governor of New York State in several Executive Orders between March and October 2020.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337 and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.      In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

9.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

10.     On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. On June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issued Executive Order 202.48 tolling all statutes

of limitations until August 5, 2020. On August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020. On October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a toll of two hundred and twenty-eight (228) days.

## THE PARTIES

**Plaintiff:**

11.     Plaintiff Francisco Javier Toral Delgado was, at all relevant times, an adult individual residing in Kings County, New York.

12.     Throughout the relevant time period, Plaintiff performed work for Defendants on streets, roadways, public parks, police precincts, and other public areas throughout the New York City area, New York State, and the Port of Newark, New Jersey.

13.     Plaintiff consents in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and his consent form is attached hereto.

**Defendants:**

14.     Defendant NY Asphalt, Inc. is an active New York corporation with its principal place of business located at 366 Industrial Loop, Staten Island, New York 10309.

15.     Defendant Broadway Paving Corp. (collectively with NY Asphalt, Inc., the "Corporate Defendants") is an active New Jersey corporation registered as a foreign business corporation in New York State with its principal place of business located at 366 Industrial Loop, Staten Island, New York 10309.

16.     The operations of NY Asphalt, Inc. and Broadway Paving Corp. are interrelated

4

and unified and are a single enterprise and/or joint employers of Plaintiff and the proposed collective and class members.

17.    At all relevant times, the Corporate Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

18.    Upon information and belief, at all relevant times, the Corporate Defendants had gross revenues in excess of $500,000.00.

18.    The Corporate Defendants are joint employers of Plaintiff and the Collective Action Members and Class Members.

19.    Upon information and belief, Defendants Michael Thompson and Joseph Gianneti (the "Individual Defendants" and, collectively with the Corporate Defendant, the "Defendants") are owners and operators of the Corporate Defendants who set the business's payroll policies, including the unlawful practices complained of herein.

20.    Throughout the relevant time period, upon information and belief, the Individual Defendants were in charge of determining the Corporate Defendants' policies with respect to payroll and otherwise running the business of the Corporate Defendants.

19.    In corporate filings with the New York State Department of State, Division of Corporations, Defendant Thompson is listed as the Chief Executive Officer of NY Asphalt, Inc.

20.    The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiff and the Corporate Defendant's other similarly situated employees and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate

5

Defendants.

21.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and each of the Collective Action members within the meaning of the FLSA.

22.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

## FLSA COLLECTIVE ACTION ALLEGATIONS

23.     Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiff brings his First Cause of Action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by Defendants at any time since November 5, 2018 and through the entry of judgment in this case (the "Collective Action Period") who worked as construction workers, machine operators, and manual laborers (the "Collective Action Members").

24.     A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of failing to pay overtime premiums for work performed in excess of forty (40) hours each week. As a result of this policy, Plaintiff and the Collective Action Members did not receive legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

25.     Plaintiff and the Collective Action Members have substantially similar job duties and were paid pursuant to a similar, if not the same, payment structure.

## FED. R. CIV. P 23 NEW YORK CLASS ALLEGATIONS

26.     Pursuant to the NYLL, Plaintiff brings his Second through Fourth Causes of Action

under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

> All persons employed by Defendants in New York at any time since March 22, 2015 and through the entry of judgment in this case (the "Class Period") who worked as construction workers, machine operators, and manual laborers (the "Class Members").

27. <u>The Class Members are readily ascertainable</u>. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by any means permissible under Federal Rule of Civil Procedure.

28. <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

29. Upon information and belief, there are in excess of forty (40) Class Members.

30. <u>Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members</u>. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

a. whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

b. whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Class Members;

c. whether Defendants failed and/or refused to pay Plaintiff and the Class Members wages for all hours worked;

d. whether Defendants failed to pay overtime wages to Plaintiff and the Class Members for all hours worked over forty (40) in a given week;

e. whether Defendants failed to provide Plaintiff and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

f.  whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

g.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

31.  Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like all Class Members, was a construction employee of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiff, like all Class Members, was, *inter alia*, was not paid overtime wages for all hours worked over forty (40) in a given workweek; was not paid wages of any kind for many hours of work; and was not provided with proper wage statements. If Defendants are liable to the Class Representative for the Class claims enumerated in this Complaint, they are also liable to all Class Members.

32.  Plaintiff and his Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiff and the Class Members, and Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover his own damages.

33.  Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

34.  A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

35.  Defendants are sophisticated parties with substantial resources. The individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

36.  The individual members of the Class have no interest or capacity to bring separate

actions; Plaintiff is unaware of any other currently pending litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Company**

37.     At all relevant times, Defendant NY Asphalt, Inc. has been in the construction business, providing services including paving, asphalt and other concrete work, snow plowing, landscaping, installing speed cameras, and other contracting work primarily upon public spaces in New York City, New York State, and New Jersey including but not limited to public streets and roadways, public parks, and police precincts.

38.     Upon information and belief, Defendants also on occasion worked on private projects, including an Amazon office site in Queens, New York.

39.     Many of Plaintiff's paystubs for 2016 show an address of NY Asphalt, Inc. of 1221 Hwy 22 E, Lebanon, NJ 08833, and some showed an address of "Staten Island, NY 10309." Subsequently, most of Plaintiff's paystubs showed an address of 366 Industrial Loop, Staten Island, NY 10309. Some paystubs have shown an address of 514 Industrial Loop, Staten Island, which is adjacent or nearly adjacent to the property of 366 Industrial Loop.

40.     Upon information and belief, at all relevant times, Defendants operated primarily out of the 366 Industrial Loop address and maintained a yard there with construction equipment.

41.     At all relevant times, Broadway Paving Corp. has been in the construction business and has operated jointly and/or as a single integrated entity with NY Asphalt, Inc., including paying wages to Plaintiff and other construction workers employed by Defendants.

42.     Upon information and belief, Broadway Paving Corp. was incorporated at the

direction of the Individual Defendants through an employee of NY Asphalt, Inc. and operates in accordance with the orders and instructions of the Individual Defendants.

43.     Upon information and belief, the Individual Defendants have also incorporated Circle Line Equipment and Circle Line Companies, which operate as equipment rental companies, from the 399 Industrial Loop, Staten Island address of NY Asphalt, Inc.

44.     At all relevant times, the Individual Defendants have been in charge of the day-to-day operations of the Corporate Defendants including, among other things, hiring and firing employees and setting the schedules and wage rates of employees.

45.     Upon information and belief, the Individual Defendants handled the operations of the Corporate Defendants and gave direction to supervisors and foremen to ensure that the work in the field was being conducted in accordance with their policies and procedures, including the policies complained of herein.

46.     Upon information and belief, the Corporate Defendants entered into contracts as prime and/or sub-contractors with New York City and New York State government agencies and/or other municipal entities that required all employees working on the projects, including Plaintiff and the Class Members, to be paid prevailing wages for work performed on New York City roadways, streets, and other public areas.

47.     Upon information and belief, Defendants also provide construction and other manual labor pursuant to contracts with government and/or public entities requiring the payment of prevailing wages in New Jersey.

48.     Plaintiff observed Defendant Thompson at the job sites on a daily basis giving orders to supervisors, speaking with clients, speaking with union representatives, and otherwise running the business operations of the Corporate Defendants.

49.     Plaintiff observed Defendant Gianneti at the NY Asphalt office located at 366 Industrial Loop, Staten Island speaking with clients, working with contracts, and otherwise overseeing the operations of the Corporate Defendants.

50.     Upon information and belief, Defendant Gianneti signed and executed contracts, including Public Works Contracts, on behalf of the Corporate Defendants.

**The Public Works Contracts**

51.     Upon information and belief, Defendants have entered into certain contracts, as either a subcontractor or prime contractor, with New York City and New York State government agencies and/or other to provide certain construction work and other manual labor on public streets, roadways, public parks, police precincts, and other public areas, or with prime contractors not currently known, to furnish labor, material and equipment to perform work (the "Public Works Contracts").

52.     Upon information and belief, the Public Works Contracts obligated Defendants to pay Plaintiff at or above the local prevailing wage rates, including any required supplemental benefits and overtime premiums for hours worked in excess of forty (40) hours per week, eight (8) hours per day, hours worked on Saturday and Sunday and hours worked during the evening, at the proper rate according with the work he performed.

53.     As an employee of Defendants who was assigned to work on Defendants' paving projects, Plaintiff was an intended third-party beneficiary of Defendants' Public Works Contracts.

54.     Upon information and belief, each project which involved street opening in New York City upon which Defendants performed work pursuant to the Public Works Contracts, required a Street Opening Permit issued by the NYC Department of Transportation. The Street Opening Permit included various stipulations for the work that was being performed, including,

but not limited to, stipulations regarding the wages that were to be paid to all workers on the excavations. Specifically, the permits provided:

WAGE01    NYC ADMINISTRATIVE CODE, 19-142, WORKERS ON EXCAVATIONS: A PERSON TO WHOM A PERMIT MAY BE ISSUED, TO USE OR OPEN A STREET, SHALL BE REQUIRED, BEFORE SUCH PERMIT MAY BE ISSUED, TO AGREE THAT NONE BUT COMPETENT WORKERS, SKILLED IN THE WORK REQUIRED OF THEM, SHALL BE EMPLOYED THEREON, (CONT. ON STIP WAGE02)

WAGE02    ...AND THAT THE PREVAILING SCALE OF UNION WAGES SHALL BE THE PREVAILING WAGE FOR SIMILAR TITLES AS ESTABLISHED BY THE FISCAL OFFICER PURSUANT TO SEC. TWO HUNDRED TWENTY OF THE LABOR LAW, PAID TO THOSE SO EMPLOYED.

55.    Upon information and belief, street opening permits were also required on projects where Defendants provided construction and other manual labor throughout New York State and New Jersey that required opening and/or excavating public streets.

56.    The promise to pay and ensure payment of the prevailing wage and supplemental benefit rate stated in the Public Works Contracts was made for the benefit of all workers furnishing labor on New York roadways and sidewalks, and, as such, the workers furnishing labor on New York roadways and sidewalks are the beneficiaries of that promise and the contracts entered into between Defendants and the public utility or other public agencies.

57.    Upon information and belief, in furtherance of the Public Works Contracts entered into by Defendants, Plaintiff performed various construction labor tasks including but not limited to operating back hoes, excavators, payloaders pavers, asphalt spreaders, roto mills, asphalt rollers, Bobcats and/or Skid Steers with different attachments such as buckets, sweepers, angle brooms, rollers, vibratory rollers, planers, slot cutters, compaction plates, among others.

58.    Upon information and belief, the Corporate Defendants are compensated by New York City and New York State government agencies and/or other municipal entities to provide

construction services and other manual labor at the prevailing union wage rates for all of the workers on the projects, including Plaintiff.

**Plaintiff's Work for Defendants**

59.     **Plaintiff Toral** worked for Defendants as an operating engineer from in or around 2000 through in or around December 2020 (the "Toral Employment Period"). Throughout the Toral Employment Period, Plaintiff Toral primarily performed work on public roadways and other public areas throughout New York State and New York City. Following Hurricane Sandy, Plaintiff Toral performed work on public roadways and other public areas in Breezy Point in Queens. Plaintiff Toral also performed work at the Port of Newark, New Jersey and, on one occasion, on a private project, an Amazon office space in Queens, New York.

60.     Throughout the Toral Employment Period, Plaintiff Toral's duties included primarily operating machinery, such as pavers, asphalt spreaders, roto mills, asphalt rollers, Bob Cats and/or Skid Steers with interchangeable attachments such as buckets, sweepers, angle brooms, rollers, vibratory rollers, planers, compaction plates, slot cutter, among others, on paving, asphalt and concrete projects.

61.     Throughout the Toral Employment Period, Plaintiff Toral's schedule was typically Monday through Friday, 7:00 am to 3:30 pm. However, Plaintiff Toral typically arrived at the job site around 6:30 am to inspect the machinery before starting the day's work, and typically stayed until at least 4:00 pm or 4:30 pm, and sometimes as late as 6:00 pm to clean the machinery and load it onto a flatbed trailer. Although Plaintiff Toral was scheduled to receive a thirty (30)-minute lunch break each day, he rarely received the full thirty (30) minute break without interruption and instead typically ate his lunch while working or during a break for a few minutes between tasks. If Defendants were working on a tight deadline or behind schedule, Plaintiff sometimes was

required to work as late as 10:00 pm or 11:00 pm. On occasion, Defendant Thompson instructed Plaintiff and other employees to stay on the site all night and sleep in their vehicles.

62.　　Sometimes, particularly when Plaintiff worked in Manhattan, he worked an overnight shift from 7:00 or 8:00 pm until 5:00 am, since in certain locations Defendants could not perform street paving work during the day.

63.　　During the summer, Plaintiff Toral typically worked six (6) or seven (7) days per week for between forty-eight (48) and seventy (70) hours per week. During the winter, Plaintiff Toral typically worked four (4) or five (5) days per week, for an average of thirty-five (35) to forty-five (45) hours per week.

64.　　Throughout the Toral Employment Period, Plaintiff Toral was not provided with any means of tracking his time worked other than signing his name on a sheet of paper when he arrived at a job site.

65.　　Throughout the Toral Employment Period, Plaintiff Toral was paid on an hourly basis.

66.　　Throughout the Toral Employment Period, Plaintiff Toral was typically paid for far fewer hours than he actually worked, such that he did not receive pay for all hours worked and did not receive overtime premiums consisting of one and one-half (1.5) times his regular hourly rates for all hours worked in excess of forty (40) hours per week or for all hours worked in excess of eight (8) hours per day.

67.　　Throughout the Toral Employment Period, Plaintiff Toral frequently received multiple paystubs for a single pay period, which often showed pay at multiple different hourly rates including at times what appeared to be supplemental benefits rates—which at all times were lower than the rates to which he was correctly entitled in light of the work that he performed.

68.    Throughout the Toral Employment Period, while Plaintiff was sometimes paid some overtime and rarely double time pay, Plaintiff did not receive wages for all hours that he worked, such that he did not receive all overtime to which he was entitled. In addition, Plaintiff was paid for many overtime hours worked at straight-time rates. This practice was frequently disguised by the multiple paystubs received by Plaintiff for a single pay period.

69.    Plaintiff Toral asked Defendant Thompson why he received multiple paystubs and was sometimes paid by Broadway Paving Corp.  Defendant Thompson would typically respond that it was for tax purposes or that Plaintiff Toral should focus on his work and be grateful that he was getting work.  Plaintiff Toral also observed other employees asking similar questions to Defendant Thompson, and employees discussed among themselves that they used to be excited about getting multiple paychecks until they saw the number of hours and total payments in each one.

70.    Plaintiff further alleges that his paystubs did not show an accurate accounting of all hours that he had worked during the workweek.

71.    Defendants' failure to pay for many hours worked and failure to pay overtime premiums of one and one-half (1.5) times the regular hourly rate for all hours worked in excess of forty (40) per week and for days he worked more than eight (8) hours in one shift, were corporate policies that applied to all construction workers employed by Defendants.

72.    Defendants failed to provide Plaintiff and their other similarly situated employees with accurate wage statement(s) with every payment of wages pursuant to the NYLL.

73.    While the rates received by Plaintiff varied throughout the Toral Employment Period, Plaintiff believes that he was at all times paid the prevailing wage laborer rates or lower and did not receive overtime premiums as required by the applicable prevailing wage schedules.

74.    Throughout the Toral Employment Period, Plaintiff Toral often received paystubs that reflected what he believes to be prevailing wage laborer rates, which included withholdings for union deductions, which typically showed the name NY Asphalt, Inc. at either a New Jersey or Staten Island, New York address. Plaintiff Toral also regularly received paystubs that reflected a rate of thirty dollars ($30.00) per hour, or in 2020 thirty-five dollars ($35.00) per hour, which did not show any union deductions, which typically showed the name Broadway Paving Corp.

75.    Upon information and belief, Defendants utilized Broadway Paving Corp. to pay Plaintiff and Collective Action Members for certain hours worked at non-union and non-prevailing wage rates to avoid making required benefits contributions for such hours.

76.    During 2014, Plaintiff Toral was paid regular (i.e., non-overtime, non-double time) rates of $27.50, $30.00, $33.75, $35.25, and $37.75. Plaintiff received some pay that appeared to be for supplemental benefits at $11.37 and $13.60 for certain hours worked.

77.    During 2015, Plaintiff was paid regular rates of $30.00 and $35.75 and supplemental benefits rates of $12.10 and $14.50.

78.    During 2016, Plaintiff was paid regular rates of $36.25, $36.75, and $37.60 and supplemental benefits rates of $13.75, $12.25, and $11.15.

79.    During 2017, Plaintiff was paid regular rates of $41.48, $38.75, $41.98, $42.28, $47.70 and $48.28.

80.    During 2018, Plaintiff was paid regular rates of $30.00, $41.98, $42.48, and $48.28.

81.    During 2019, Plaintiff was paid regular rates of $30.00, $42.48, $42.98, and $48.48

82.    During 2020, Plaintiff was paid regular rates of $35.00, $42.98, and $43.48.

83.    Throughout the Toral Employment Period, Plaintiff Toral was classified by Defendants as a paving laborer (Local 1010 of New York City) and paid rates that he believes

approximately reflected prevailing wage rates for paving laborers, even though he typically operated heavy machinery and therefore should properly have been classified as an operating engineer (Paving I and/or Paving II) or similar classification and received prevailing wages at those higher rates.

84.    From the beginning of the Toral Employment Period through in or around 2012, Plaintiff Toral was not permitted to join any union.

85.    In or around 2012, Defendant Thompson arranged for Plaintiff Toral to join the Heavy and General Construction Laborers Union Local 472 in New Jersey, even though Plaintiff Toral worked primarily in New York and typically operated heavy machinery and was entitled to prevailing wages at higher rates than the applicable laborer rates.

86.    In or around 2017, Plaintiff Toral contacted and joined Laborers' Local 1010 in New York in order to access union benefits that he did not receive from Local 472. At that time, Defendant Thompson told Plaintiff Toral that he would never pay him at a rate higher than a laborer rate, despite the fact that Plaintiff was performing work as an Operating Engineer.

87.    Throughout the Toral Employment Period, for his work as an Operating Engineer on public works projects, Plaintiff should have been paid prevailing wage rates of approximately $70.00 per hour base wage plus approximately $30.00 per hour in supplemental benefits[1], depending on the date and location of such work, which was significantly higher than the rates that Plaintiff received.

88.    Throughout the Toral Employment Period, Plaintiff often observed union representatives entering Defendants' job sites and asking him, other employees, and Defendant Thompson, to show the union books. Upon information and belief, they were primarily

---

[1] These averages are based on prevailing wage schedules published by the New York City Comptroller for the relevant time period.

representatives from Local 1010 in New York, Local 14-14B International Union of Operating Engineers in New York and Local 15 International Union of Operating Engineers in New York.

89.     Upon information and belief, during the period of time for which Plaintiff performed work on public works projects, Defendants failed to ensure payment of the correct prevailing rate of wages and supplemental benefits, including overtime pay, to which Plaintiff was entitled.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

90.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

91.     Defendants violated the FLSA overtime rights of Plaintiff and the Collective Action Members by failing to pay overtime premiums of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

92.     By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

93.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

94.     Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages

for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Class Members)**

95.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

96.     Defendants violated the NYLL overtime rights of the Plaintiff and the Class Members by failing to pay overtime premiums consisting of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

97.     Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

98.     Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### THIRD CAUSE OF ACTION
### NEW YORK LABOR LAW – FAILURE TO PAY WAGES
#### (Brought on Behalf of Plaintiff and the Class Members)

99.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

100.    Pursuant to NYLL § 191 and the cases interpreting same, workers such as Plaintiff and the Class Members are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which wages are earned." Thus, Defendants violated NYLL § 191 by failing to pay Plaintiff all of their wages earned within the week such wages were due.

101.    Pursuant to NYLL § 193, "No employer shall make any deduction from the wages of an employee," such as Plaintiff and the Class Members, that is not otherwise authorized by law or by the employee.

102.    By withholding wages and overtime compensation from Plaintiff, Defendants made unlawful deductions in wages owed to Plaintiff.

103.    Defendants' failure to pay Plaintiff wages of any kind for a substantial number of hours worked during most pay periods violated NYLL §§ 191 and 193.

104.    Defendants' failure to comply with NYLL §§ 191 and 193 caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid wages, including piece-rate and/or commission payments, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## FOURTH CAUSE OF ACTION
## NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS
### (Brought on Behalf of Plaintiff and the Class Members)

105.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

106.    Defendants have willfully failed to supply Plaintiff and the Class Members a proper wage statement as required by Article 6, § 195(3).

107.    Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants two hundred fifty dollars ($250.00) per employee for each workweek that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000) per employee, as provided for by NYLL §§ 198(1-d) liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT
### (Brought on Behalf of Plaintiff)

108.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

109.    Upon information and belief, the Public Works Contracts entered into by Defendants contained schedules of the prevailing rates of wages and supplemental benefits or reference to the NYLL provisions governing payment of prevailing wages to be paid to Plaintiff and the employees performing work pursuant to such contracts.

110.    Those prevailing rates of wages and supplemental benefits were made part of the Public Works Contracts for the benefit of the Plaintiff and the other employees performing work

pursuant to such contracts. In the event that the contracts or agreements entered into failed to explicitly contain prevailing wage schedules, the prevailing wage requirements were supplemented as a matter of law, requiring Defendants to pay the Plaintiff prevailing wages, daily/weekly overtime and supplemental benefits for all work performed.

111.    Defendants' failure to pay Plaintiff at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed on Public Works Projects constituted a material breach of the contracts entered into directly or indirectly between Defendants and certain public entities.

112.    As a result of Defendants' failure to pay Plaintiff at prevailing wage rates, Plaintiff is entitled to relief from Defendants for breach of contract under New York common law of contracts.

**SIXTH CAUSE OF ACTION**
**UNJUST ENRICHMENT & QUANTUM MERUIT**
**(Pled In The Alternative)**
**(Brought on Behalf of Plaintiff)**

113.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

114.    Based on Defendants' failure to pay Plaintiff the appropriate prevailing wage rates, Defendants were unjustly enriched at the expense of Plaintiff.

115.    Equity and good conscience require that Defendants pay restitution to Plaintiff.

116.    Upon information and belief, when Defendants entered into the contract, they agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiff and other employees who performed work pursuant to the contracts.

117.    Plaintiff provided valuable services to Defendants performing prevailing wage jobs

22

for which Plaintiff expected compensation. Defendants knowingly accepted such services yet failed to pay Plaintiff the reasonable value of such services as defined by the New York State and New York City prevailing wage schedules.

118.    As a result of Defendants' failure to pay Plaintiff at prevailing wage rates on prevailing wage jobs and Defendants' corresponding unjust enrichment, Plaintiff is entitled to relief from Defendants under New York's common law of unjust enrichment.

119.    As a result of Defendants' failure to pay Plaintiff the reasonable value of the valuable services they rendered, Plaintiff is entitled to relief from Defendants under New York's common law of quantum meruit.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class, appointing Plaintiff and his counsel to represent the Class and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of the common law and New York State law;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL and New York Common Law;

e.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.    An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.    An award of compensatory damages as a result of Defendants' failure to pay all wages to which Plaintiff and the Class Members are entitled, pursuant to the NYLL and supporting regulations;

h.    An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

i.    An award of liquidated damages for Defendants' failure to pay all wages to which Plaintiff and the Class Members are entitled, pursuant to the NYLL and supporting regulations

j.    An award of two hundred fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3), pertaining to distribution of wage statements, occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1-d);

24

k.      An award of monetary damages to be proven at trial for all unpaid prevailing wages,

        daily/weekly overtime and supplemental benefits owed to Plaintiff;

l.      An award of prejudgment and post-judgment interest;

m.      An award of costs and expenses of this action together with reasonable attorneys'

        and expert fees; and

n.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury on all questions of fact raised by the complaint.


Dated:  New York, New York
        November 5, 2021

                                        Respectfully submitted,

                                        **PELTON GRAHAM LLC**

                                        By: _____
                                        Brent E. Pelton (BP 1055)
                                        Taylor B. Graham (TG 9607)
                                        111 Broadway, Suite 1503
                                        New York, New York 10006
                                        Telephone: (212) 385-9700
                                        Facsimile: (212) 385-0800

                                        *Attorneys for Plaintiff, the putative FLSA Collective
                                        and Class*

25

**Notice of Shareholder Liability for Services Rendered
Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"),
the ten (10) largest shareholders of NY ASPHALT, INC. and BROADWAY PAVING CORP.,
are hereby notified that the plaintiff in this matter, individually and on behalf of the putative FLSA
collective and the class he seeks to represent, intends to enforce your personal liability, as the ten
(10) largest shareholders of NY ASPHALT, INC. and BROADWAY PAVING CORP., and charge
you with indebtedness of said corporations to the plaintiffs for services performed for the
corporations as employees during the six (6) year period preceding the filing of the complaint.


Dated:  November 5, 2021

_____
Brent. E. Pelton

26

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of NY Asphalt Inc., Broadway Paving Corp., and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_Javier Delgado_
Signature

_Francisco Javier Toral Delgado_
Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de NY Asphalt Inc., Broadway Paving Corp., y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentancion de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_Javier Delgado_
Firma

_Francisco Javier Toral Delgado_
Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.